SIMON STRAUS, Defendant in Error, *vs.* JOSEPH PUTTA *et al.* Plaintiffs in Error.

*Opinion filed October 16, 1914.*

1. EASEMENTS—*what reservation in deed reserves an easement.* Where the owners of a lot convey the west half thereof by a deed containing a provision that "in part consideration of this deed the purchasers, their heirs and assigns, agree to leave perpetually vacant the east 3 feet by 125 feet of said premises," an easement is thereby reserved in favor of the owners of the east half of the lot and passes under a ninety-nine year lease executed by them.

2. SAME—*circumstances in view of parties may be considered in construing provision for easement.* In construing a provision in a deed expressly granting an easement it is proper to consider the circumstances and considerations in view of the parties at the time the grant was made which moved them to its execution and acceptance.

3. SAME—*provision reserving an easement construed.* A provision in a deed to the west half of a lot that the purchasers shall "leave perpetually vacant the east 3 feet by 125 feet of said premises" is properly construed to mean that such strip shall remain unobstructed by fences or buildings, where the grantor subsequently leased the east half of the lot for ninety-nine years for the purpose of having a theater building erected thereon, which, under the ordinances of the city, was required to have emergency exits and which exits opened on such strip.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding.

Q. J. CHOTT, (FRANK H. CULVER, of counsel,) for plaintiffs in error.

FRIEDMAN & ADER, (JOHN S. STEVENS, of counsel,) for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The defendant in error, Simon Straus, complainant in the court below, filed his bill for an injunction against the plaintiffs in error, Joseph and Mary Putta, defendants in

the court below, charging that Edward and Albert Mendel were the owners of lots 1, 2, 3, 4, 5 and 6, in block 1, in Willard & Wetmore's subdivision, in the city of Chicago, and that on October 1, 1911, they made a lease to the complainant of lots 1, 2, 3, 4 and 5 and the east half of lot 6 for ninety-nine years at a certain rental, and subject, among other provisions, to a requirement on the part of complainant to erect certain buildings on the land so devised; that in accordance with said provisions complainant had erected and was just completing upon said premises, among other buildings, a theatre building which covers a portion of the land so devised and abuts on said west half of lot 6; that theretofore, on January 14, 1911, said Mendels conveyed, by warranty deed, the west half of lot 6, adjoining the east half of said lot 6, to said Joseph Putta and Mary Putta; that by said deed said Puttas agreed to leave perpetually vacant the east 3 feet by 125 feet of the west half of said lot 6, and that such agreement was a covenant running with the land; that said complainant has erected said theatre building in accordance with the ordinances of Chicago, and that he has built in the west wall thereof, and close to the east line of the west half of lot 6, two emergency exits, four by seven feet, which are closed by iron doors attached to and swinging close upon said building, to be used only in case of emergency, such as fire, in providing for persons then in said theatre means of exit through said doors; that said Puttas, in violation of said agreement, have constructed and maintained on the north line of said east three feet a permanent iron fence, on the south line thereof a stable and on ten feet of said east three feet a wagon shed; that one of the exits built in said wall comes within the space occupied by said shed, in which said defendants have placed a wagon, so that persons in an emergency cannot step out or go through said emergency exit on account of said obstruction; that said defendants have placed opposite the other emergency exit planks and

boards, so that the same is closed and barricaded and rendered useless in an emergency to persons in said theatre; that complainant has demanded that said defendants remove said obstructions; that the ordinances of Chicago require that before complainant can open said theatre he must have exits in the west wall of said building unobstructed, so that they may be used in an emergency; that the defendants did not object to the complainant erecting said theatre; that said defendants have placed obstructions upon said exits, so that, unless restrained by this court, they will interfere with the possession of the complainant in said property; that relying upon said agreement, and upon the fact that said defendants would comply with the same, the complainant erected said building; that defendants knew that complainant expected to have said east three feet remain vacant for the purpose of complying with the ordinances of Chicago, and made no objections; that complainant has expended $50,000 in erecting said theatre, which he would have erected differently had not said conveyance contained said agreement. The prayer of the bill was that defendants be restrained from interfering with the possession of complainant in his property, and from placing any obstruction, building, fence, etc., in, upon or along said three-foot strip; that a mandatory injunction be issued requiring defendants to remove the iron fence, barn, wagon shed, wagon, planks and boards, etc., from said east three feet of said lot 6, and that they be enjoined from placing any obstruction thereon which will prevent unobstructed egress and ingress.

The defendants filed an answer, in which they admit that the complainant is in possession of the land described in said bill; admit that the Mendels conveyed to them the west half of lot 6, and that the deed conveying the same to them contained the words, "in part consideration of this deed the purchasers, their heirs and assigns, agree to leave perpetually vacant the east 3 feet by 125 feet of said premises," and allege that they have always left vacant said east

3 feet by 125 feet and that the same is now vacant; admit that complainant has made two openings or doors in the west wall of said theatre building, which doors, if opened, must swing over and upon the land of these defendants, and allege that complainant has no right to swing such doors over or upon their land and that he cannot do so without committing a trespass; admit that the sole and only purpose of the said doors or openings is to provide means whereby persons in said theatre can pass through said doors or openings to and upon the land of defendants, and call attention to the allegations of the bill that it is the intention of complainant to make use of the real estate of defendants as a means of exit for persons in said theatre, to all of which he has no right; admit they made no objections to the erection of said building but allege they had no right to do so; admit they are now maintaining on the north line or street line of their land an iron fence and allege they have a right to maintain it; deny that there is a barn on the south end of said east three feet; admit there is a temporary wagon shed on two of said three feet for about ten feet thereof, but allege said wagon shed was there when they acquired title and possession, and deny said temporary shed interferes with any legitimate use by complainant of his land; allege that there was a fence upon the lot line dividing the real estate of defendants from that acquired by complainant at the time he acquired the same, and that they are now maintaining the same and have a lawful right so to do; allege that said complainant has no lawful right to complain that a wagon is sometimes on said east three feet, and allege they have a right to put and keep said wagon there; admit that the fence which was on the lot line between the land of complainant and defendants when complainant acquired his land may be in front of said exits which complainant has without right placed in the west wall of his theatre, and allege they had, and have, a right to erect and maintain the same and that such fence

is not a violation of said provision in the deed conveying said land to them, and deny that said complainant has any right to complain thereof; admit that they have refused to remove said fence and other structures from said east three feet, and allege they are under no obligation so to remove them or any of them; allege that they had, and have, a lawful right to erect and maintain them and that they are not a violation of the provision of said deed; allege that complainant has no right, by reason of said provision of said deed or otherwise, to require them to furnish the use of their real estate for an emergency exit or for any other purpose; allege that complainant has not filed his bill in good faith and with the intention of enforcing the provision of said deed, but that he has filed the same with the intent of acquiring, if he can, the right to use the land of defendants to provide a passageway for persons attending his theatre, from said theatre over and along the property of defendants to the street; allege that the only right given by said provision in said deed to complainant, if it gave him any right, (which is denied,) was and is an easement of air and light.

The case was heard on the bill and answer, and when a case is so submitted the answer is to be taken as true. (*Roach* v. *Glos,* 181 Ill. 440.) Upon a hearing the court entered a decree ordering the defendants to remove all fences and obstructions upon and enclosing said three-foot strip, and further to remove all sheds, structures and obstructions of any kind, and perpetually enjoining them from erecting any other building or structure upon said three-foot strip, and decreeing that they should suffer said three-foot strip at all times to remain vacant and unoccupied. The defendants objected to the entry of the decree and have sued out a writ of error from this court, a freehold being involved, and have assigned as errors the entering of the decree in favor of the complainant and against the defendants; in not entering a decree dismissing the bill for want

of equity; in not holding that the bill of complaint did not state a cause of action; in not holding that the answer in said cause should be taken as true and a complete defense to the bill; and in entering a decree mandatory in its character, commanding the defendants to do affirmative acts.

We have set out the bill and answer at some length to show the contentions of the respective parties as to their rights and interests in the premises. As appears from the allegations of the bill, the deed from the Mendels to the Puttas contained the following reservation: "In part consideration of this deed the purchasers, their heirs and assigns, agree to leave perpetually vacant the east 3 feet by 125 feet of said premises." Subsequently the Mendels gave to defendant in error a ninety-nine year lease to the east half of lot 6, adjoining the strip in question. This was admitted by the answer, and while the answer alleges that said three-foot strip is vacant, it is also admitted in the answer that the shed, lumber and fences have been placed thereon as charged in the bill. Plaintiffs in error, Joseph and Mary Putta, claim that they have a right to place and maintain these obstructions on said three-foot strip and that the same are not in violation of the reservation in their deed for the lot, and deny that defendant in error has any right to any use of said three-foot strip. The effect of the reservation in the deed of plaintiffs in error was to create an easement in favor of the owners of the east half of lot 6 adjoining the three-foot strip in question, and this right passed to defendant in error by the ninety-nine year lease.

The principal question is the extent of the right reserved by the provision in the deed. While this right must be ascertained from the words of the instrument creating it, we have held that in construing an easement which is given by express grant it is proper to consider the circumstances and considerations in view of the parties at the time the grant was made, which moved them to its execution and

acceptance. (*Louisville and Nashville Railroad Co.* v. *Koelle,* 104 Ill. 455.) As said in *Ashelford* v. *Willis,* 194 Ill. 492, in which an easement of right of way was involved (p. 503): "It is always admissible, in determining the effect of an instrument or considering its meaning, to look to all the facts and circumstances surrounding the making of it." In the case at bar the Mendels sold the west half of lot 6, and the deed contained a reservation that the east three feet of said west half should remain vacant. They had some purpose in making such reservation. Such intent and purpose are perhaps best shown by the subsequent action of the Mendels in granting the ninety-nine year lease to Straus, with the provision, as alleged in the bill of complaint, that he should erect a theatre building thereon. They were presumed to know the law and the ordinances of the city of Chicago bearing on the construction of such buildings, and that under those ordinances theatre buildings must be provided with emergency exits, as a wise and reasonable precaution in case of fire or the happening of some event which would make it necessary for large crowds to leave such buildings quickly. On the other hand, had the Mendels, by the terms of the ninety-nine year lease, required the erection of a building which would not require openings for emergency exits but which would require a greater amount than common of light and air, there would be good reason for holding that the words in the deed requiring the strip in question to remain vacant should be construed as an easement of light and air, only. It would seem, under the circumstances, that it was the intention of the parties by the use of the word "vacant," as applied to the strip in question, that said strip should have nothing on it,—should be unobstructed,—for the benefit of both abutting proprietors. The bill sets out the reservation in the deed and the obstructions on the three-foot strip. The answer admits both. The court by its decree did nothing more than follow the strict construction of the provision in the

deed in decreeing that said strip be kept vacant. On the questions before us on this appeal the decree of the superior court was right. The court had jurisdiction to issue its mandatory injunction requiring the removal of the obstructions on the strip and to order that it be kept vacant. *Feitler* v. *Dobbins,* 263 Ill. 78.

For the reasons given, the decree of the superior court will be affirmed.

*Decree affirmed.*